**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

**SUN RAY VILLAGE OWNERS
ASSOCIATION,**

   **Plaintiff,**

v.                Case No. 3:06cv177/MCR/MD

**OLD DOMINION INSURANCE
COMPANY,**

   **Defendant.**
                /

## ORDER GRANTING SUMMARY JUDGMENT

In this insurance dispute, Plaintiff Sun Ray Village Owners Association ("Sun Ray") sues Defendant Old Dominion Insurance Company ("Old Dominion") for benefits under several flood insurance policies. Presently before the court is Old Dominion's Motion for Summary Judgment.[1] Upon consideration of the parties' written and oral arguments and for the reasons given below, the court GRANTS Old Dominion's motion for summary judgment and DISMISSES plaintiff's claim with prejudice.[2]

## BACKGROUND

The following facts are recited in the light most favorable to plaintiff or, except as noted, are undisputed.[3] In September 2004, the Sun Ray Village Condominiums, located at 20 Via DeLuna Drive, Pensacola, Florida, consisted of eleven buildings, with each building containing seven to nine individual units. The units in ten of these buildings

---

[1] See doc. 30; see also docs. 43 (Sun Ray's memorandum in opposition); 55-2 (Old Dominion's reply); 57-2 (Sun Ray's sur-reply).

[2] Also before the court is Old Dominion's Motion to Strike. (Doc. 56). Because Old Dominion's motion for summary judgment is granted, its motion to strike is denied as moot.

[3] At summary judgment this court must view the facts in the light most favorable to the nonmoving party. See Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). The court therefore does so here, drawing those facts from the pleadings, depositions, and other evidentiary materials on file. Nevertheless, the court observes that what are stated as "facts" herein for purposes of summary judgment review may not be the actual facts. See Montount v. Carr, 114 F.3d 181, 182 (11th Cir. 1997).

(seventy-seven in total) were each insured under a separate Standard Flood Insurance Policy ("SFIP"), issued by Old Dominion in its capacity as a Write-Your-Own ("WYO") Program Carrier participating in the National Flood Insurance Program ("NFIP").[4] In addition, the Sun Ray Village Condominiums had a pool house and administration building which were each insured under separate SFIPs. Plaintiff Sun Ray Village Owners Association ("Sun Ray") is the holder of these policies.[5]

Hurricane Ivan struck the Northwest Florida area on or about September 16, 2004. Flooding from the storm severely damaged the Sun Ray Village Condominiums. Following the hurricane Sun Ray notified Old Dominion of its flood loss and filed a claim for benefits under its SFIPs. Old Dominion assigned an independent adjuster, Leo Soucy of Bellmon Adjusters, to assist Sun Ray with its claim. Based on Soucy's adjustment, Old Dominion accepted coverage and issued multiple checks to Sun Ray totaling $1,409,566.95, for building and contents loss.[6]

By letter dated April 12, 2005, Sun Ray advised Old Dominion that it was entitled to additional compensation beyond Old Dominion's determination of Sun Ray's building

---

[4] The National Flood Insurance Act of 1968, 42 U.S.C. § 4001, et seq., established the NFIP. The Federal Emergency Management Agency ("FEMA"), which is charged with administering the NFIP, by regulation has promulgated the SFIP and provided for marketing and claims adjustment by private insurers operating as WYO companies. 44 C.F.R. § 62.23. The WYO companies issue SFIPs in their own names as insurer, and they arrange for the adjustment, settlement, payment and defense of all claims arising from the policies, with the federal government acting as the guarantor and reinsurer. See § 61.13(f); § 62.23(d); see also Gowland v. Aetna, 143 F.3d 951, 953 (5th Cir. 1998). Thus in issuing SFIPs WYO companies act as the fiscal agent of the United States government. See Sanz v. United States Security Insurance Co., 328 F.3d 1314, 1316 (11th Cir. 2003).

[5] The texts of the SFIPs in this case are contained within the Code of Federal Regulations (C.F.R.) and can be found at 44 C.F.R. Part 61, Appendix A(1) (2003) (the Dwelling form SFIP) and Appendix A(2) (2003) (the General Property form SFIP). Sun Ray's SFIPs for its residential units covered units of varying size and structure and therefore different units had different amounts of flood coverage (ranging from $55,100.00 to $64,100.00) for building loss, but the same limit ($2,300.00) for contents loss. The pool house had a $46,300.00 limit for building loss and a $2,300.00 limit for contents loss. The administration building had a $500,000.00 limit for building loss and a $243,100.00 limit for contents loss.

[6] This payment included compensation up to many units' policy limit for contents loss.

Case No. 3:06cv177/MCR/MD

damages, but failed to explain the basis for its assertion.[7] In response, Old Dominion drafted a letter dated April 15, 2005, stating that "[a]t this time, we have not received any documentation that supports additional payment is due for flood damage. Since we have not received any documentation supporting additional payment is due, we have no choice but to deny your request for additional payment." Sun Ray subsequently filed proof of loss forms dated September 14, 2005, requesting a total of approximately $1 million in supplemental payments for building damages. Sun Ray did not submit any documentation to support its claim for additional payments. Old Dominion thereafter denied each proof of loss on November 10, 2005, because "we have not received the documentation to substantiate the amount being claimed." Old Dominion further stated that it would be "glad to review any additional documentation you wish to submit." No additional documentation was submitted.

Sun Ray filed this lawsuit on April 24, 2006. In its complaint, Sun Ray alleges that Old Dominion breached the terms of the SFIPs by wrongfully refusing to pay the full amount due for covered losses and refusing to either accept or deny coverage for the claim. Old Dominion has filed the pending motion for summary judgment arguing that Sun Ray's claim is barred because Sun Ray failed to support its proofs of loss with "detailed repair estimates" and thus failed to strictly comply with the terms of its SFIPs.[8] In response, Sun Ray argues it was not required to file any supporting documentation beyond the proof of loss forms unless specifically requested to do so by Old Dominion. Sun Ray therefore maintains that its proof of loss forms were sufficient to comply with the terms of

---

[7] Notwithstanding this letter, Sun Ray accepted the payments as partial compensation for its damages.

[8] In its motion for summary judgment, Old Dominion also argues that summary judgment is warranted because Sun Ray's claim is time-barred. In its reply to Sun Ray's memorandum in opposition, however, Old Dominion concedes that Sun Ray has produced sufficient evidence to create a genuine issue of material fact as to whether this lawsuit was timely filed and thus summary judgment on this basis is inappropriate. See doc. 55-2. Old Dominion also argues that summary judgment is warranted because the documentation Sun Ray has produced *during this litigation* is insufficient to allow Old Dominion to verify the amount of loss claimed. Because the court finds that summary judgment is appropriate based on Sun Ray's failure to support its proofs of loss, the court need not consider this additional basis for granting Old Dominion's motion.

its SFIPs and its claim is not barred.

## LEGAL STANDARDS

### A. Summary Judgment Standard

Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, show that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). "The mere existence of *some* alleged factual dispute between the parties," however, "will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986) (emphasis in original). A dispute about a material fact is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. A fact is "material" if it may affect the outcome of the case under the applicable substantive law. See id.

When a motion for summary judgment is made and properly supported by affidavits, depositions, or answers to interrogatories, the adverse party may not rest on the mere allegations or denials of the moving party's pleadings. Instead, the nonmoving party must respond by affidavits or otherwise and present specific allegations showing that there is a genuine issue of disputed fact for trial. Fed. R. Civ. P. 56(e). When assessing the sufficiency of the evidence, the court must view all the evidence, and all factual inferences reasonably drawn therefrom, in the light most favorable to the nonmoving party. See Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 918 (11th Cir. 1993). A mere scintilla of evidence in support of the nonmoving party's position will not suffice to demonstrate a genuine issue of material fact and thereby preclude summary judgment. See Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990). If the adverse party fails to show a genuine issue of material fact, summary judgment, if appropriate, may be entered against the nonmoving party.

**B. Establishing Loss Pursuant to SFIP Requirements**[9]

In the event of a flood loss, an insured whose property is covered by an SFIP must satisfy certain requirements to be compensated for the loss. 44 C.F.R. Pt. 61, App. A(1), Art. VII(J) (2003) ("Article VII(J)" or "Art. VII(J)"); see Gowland v. Aetna, 143 F.3d 951, 953-54 (5th Cir. 1998).[10] First, the insured must give the insurer "prompt written notice" of his flood loss. Art. VII(J)(1). The insured must then "separate the damaged and undamaged property" as soon as reasonably possible and "[p]repare an inventory of damaged property showing the quantity, description, actual cash value, and amount of loss." Art. VII(J)(2) and (3). In preparing this inventory, the insured must "[a]ttach all bills, receipts, and related documents." Art. VII(J)(3). Insureds are also required to send the insurer a proof of loss

---

[9] The language in 44 C.F.R. Part 61, Appendix A(1) (2003) (the Dwelling form SFIP) is the same as in 44 C.F.R. Part 61, Appendix A(2) (2003) (the General Property form SFIP) unless noted. Thus while the court's citations are to Appendix A(1), the court's discussion applies equally to both of the SFIPs involved in this case unless otherwise noted.

[10] Article VII(J) "Requirements in Case of Loss" provides in pertinent part that in the case of a flood loss to insured property, an insured must:

1. Give prompt written notice to us;
2. As soon as reasonably possible, separate the damaged and undamaged property, putting it in the best possible order so that we may examine it;
3. Prepare an inventory of damaged property showing the quantity, description, actual cash value, and amount of loss. Attach all bills, receipts, and related documents;
4. Within 60 days after the loss, send us a proof of loss, which is your statement of the amount you are claiming under the policy signed and sworn to by you, and which furnishes us with the following information:
   a. The date and time of loss;
   b. A brief explanation of how the loss happened;
   c. Your interest (for example, "owner") and the interest, if any, of others in the damaged property;
   d. Details of any other insurance that may cover the loss;
   e. Changes in title or occupancy of the covered property during the term of the policy;
   f. Specifications of damaged buildings and detailed repair estimates;
   g. Names of mortgagees or anyone else having a lien, charge, or claim against the insured property;
   h. Details about who occupied any insured building at the time of loss and for what purpose; and
   i. The inventory of damaged personal property described in J.3. above.
5. In completing the proof of loss, you must use your own judgment concerning the amount of loss and justify that amount.

44 C.F.R. Pt. 61, App. A(1), Art. VII(J) (2003) ("Article VII(J)" or "Art. VII(J)").

Case No. 3:06cv177/MCR/MD

within sixty days of the flood loss. Art. VII(J)(4). The proof of loss is the insured's "statement of the amount [he is] claiming under the policy." Id. It must be signed and sworn to by the insured and must furnish the insurer with certain information. Specifically, Article VII(J)(4) requires the insured to:

> 4. Within 60 days after the loss, send us a proof of loss, which is your statement of the amount you are claiming under the policy signed and sworn to by you, and which furnishes us with the following information:
>
>    a. The date and time of loss;
>    b. A brief explanation of how the loss happened;
>    c. Your interest (for example, "owner") and the interest, if any, of others in the damaged property;
>    d. Details of any other insurance that may cover the loss;
>    e. Changes in title or occupancy of the covered property during the term of the policy;
>    f. Specifications of damaged buildings and detailed repair estimates;
>    g. Names of mortgagees or anyone else having a lien, charge, or claim against the insured property;
>    h. Details about who occupied any insured building at the time of loss and for what purpose; and
>    i. The inventory of damaged personal property described in [Article] J.3. above.

Id. Article VII(J)(5) further instructs insureds that when completing the proof of loss they should use their own judgment concerning the amount of loss "and justify that amount." Art. VII(J)(5).

Under the SFIP, an insured may not file suit for coverage unless it has complied with all requirements of the policy. See 44 C.F.R. Pt. 61, App. A(1), Art. VII(R) (2003) ("Article VII(R)"). Strict adherence to the proof of loss requirements is a condition precedent to recovery under the SFIP. See Sanz v. United States Security Insurance Co., 328 F.3d 1314, 1318 (11th Cir. 2003); Suopys v. Omaha Property and Casualty, 404 F.3d 805, 810 (3rd Cir. 2005); Dawkins v. Witt, 318 F.3d 606 (4th Cir. 2003); Mancini v. Redland Insurance Co., 248 F.3d 729, 733-34 (8th Cir. 2001). Substantial compliance is not sufficient; rather, an insured must completely satisfy the proof of loss requirements before

any monetary claim can be awarded. See Sanz, 328 F.3d at 1318. An insured's "failure to provide a complete, sworn proof of loss statement . . . relieves the federal insurer's obligation to pay what otherwise might be a valid claim." See Gowland, 143 F.3d at 954.

**DISCUSSION**

In this case, the parties agree that Sun Ray timely submitted its proof of loss for each damaged building.[11] The parties also agree that Sun Ray's proofs of loss satisfied the requirements in Article VII(J)(4) that they be signed and sworn to and state a sum certain for the amount of loss claimed. Finally, the parties agree that Sun Ray did not submit any supporting documentation with its proofs of loss. The parties disagree over whether the SFIP required Sun Ray to submit documentation supporting its proofs of loss, including "detailed repair estimates," beyond the proof of loss forms.

### A. The Parties' Contentions

Old Dominion argues that Sun Ray's proofs of loss were inadequate because Sun Ray failed to provide any supporting documentation justifying payment beyond Soucy's adjustment of the loss. Old Dominion argues that under Article VII(J), insureds must provide some documented support for the amount of loss claimed and that specifically under Article VII(J)(4)(f) this must include detailed repair estimates. Further, Old Dominion argues that this requirement must be satisfied within the same time frame as the proof of loss. Finally, Old Dominion argues that the burden is on the insured to provide the necessary support with its proof of loss; insurers should not have to force insureds' compliance.

In response, Sun Ray argues that Article VII(J) contains no requirement that it support its loss beyond the proof of loss form. According to Sun Ray, insureds are only required to provide supporting documentation if requested by the insurer pursuant to Article VII(K), which outlines the insurer's options after receiving a proof of loss, one of which states that the insurer may request a complete inventory of the lost, damaged, or destroyed

---

[11] Sun Ray timely filed its proofs of loss consistent with the waiver issued by the Federal Insurance Administrator in response to the number of hurricanes which struck the Gulf Coast in 2004. See Goodman v. Fidelity Nat'l Prop. & Cas. Ins. Co., 2007 WL 1521479 (N.D.Fla. May 23, 2007).

property.[12] Sun Ray argues that requiring an insured to submit supporting documentation with its proof of loss under Article VII(J) renders Article VII(K) superfluous because it makes little if any sense for an insured to submit its documentation twice. Sun Ray supports its argument by reference to the pre-2001 version of the SFIP, which did not require documentation with the proof of loss. Under this former version of the SFIP, the insured could submit its supporting documentation later, after submitting the proof of loss.[13]

---

[12] Article VII(K), "Our Options After a Loss," provides in pertinent part that:

> Options we may, in our sole discretion, exercise after loss include the following: . . .
>
> 2. We may request, in writing, that you furnish us with a complete inventory of the lost, damaged or destroyed property, including:
>    a. Quantities and costs;
>    b. Actual cash values or replacement cost (whichever is appropriate);
>    c. Amounts of loss claimed;
>    d. Any written plans and specifications for repair of the damaged property that you can reasonably make available to us; and
>    e. Evidence that prior flood damage has been repaired.

44 C.F.R. Pt. 61, App. A(1), Art. VII(K) (2003) ("Article VII(K)" or "Art. VII(K)").

[13] The proof of loss and documentation requirements were both formerly found in Article IX(J) of the pre-2001 SFIP, which provided in pertinent part:

> 3. Within 60 days after the loss, send us a proof of loss, which is your statement of the amount you are claiming under the policy signed and sworn to by you and furnishing us with the following information:
>    a. The date and time of the loss;
>    b. A brief explanation of how the loss happened;
>    c. Your interest in the property damaged (for example, "owner") and the interest, if any, of others in the damaged property;
>    d. The actual cash value or replacement cost, which is appropriate, of each damaged item of insured property and the amount of damages sustained;
>    e. Names of mortgagees or anyone else having a lien, charge, or claim against the insured property;
>    f. Details as to any other contracts of insurance covering the property, whether valid or not.
>    g. Details of any changes in ownership, use, occupancy, location or possession of the insured property since the policy was issued;
>    h. Details as to who occupied any insured building at the time of loss and for what purpose; and
>    i. The amount you claim is due under this policy to cover the

See Burns v. FEMA, 84 F.Supp.2d 839 (S.D.Tex. 2000); Mahood v. Omaha Prop. & Cas., 174 F.Supp.2d 284 (E.D.Pa. 2001). Although acknowledging the language in the SFIP is now different,[14] Sun Ray argues that the current version of the SFIP was not intended to substantively change the proof of loss requirements and thus the documentation requirement remains separate, and supporting documentation need not be submitted with the proof of loss. Sun Ray argues this interpretation makes sense because the purpose of the proof of loss is merely to put the insurer on notice of the claim. Sun Ray also points to the proof of loss form itself, which does not indicate that any additional documentation is required. Sun Ray's position is that the reference in Article VII(J)(4)(f) to "detailed repair estimates" means only that an insured must submit a proof of loss form containing an actual dollar figure for the cost of repair and be prepared to justify that amount with documents *if requested by the insurer*.

### B. Analysis

Sun Ray's argument that Article VII(J)(4), concerning the proof of loss, requires nothing more than notice of the claim to the insured is unconvincing. First, notice is already required by Article VII(J)(1); it makes no sense that (J)(4) would require the same. See Gowland, 143 F.3d at 954. Moreover, by its plain terms, Article VII(J)(4)(f) of the SFIP requires the insured to submit *detailed* repair estimates with its proof of loss. Finally, Article VII(J)(5), instructs that, when completing the proof of loss under (J)(4), the insured must *justify* the amount of the loss claimed.

---

        loss, including statements concerning:
            (1)    The limits of coverage stated in the policy; and
            (2)    The cost to repair or replace the damaged property (whichever costs less).
   4.    Cooperate with our adjuster or representative in the investigation of the claim;
   5.    Document the loss with all bills, receipts, and related documents for the amount being claimed;

44 C.F.R. Pt. 61, App. A(1), Art. IX(J) (2000) ("Article IX(J)" or "Art. IX(J)").

    [14] As referenced in footnote 10, the version of the SFIP pertinent to this case requires that the insured submit "detailed repair estimates" *with* the proof of loss form. See Art. VII(J)(4)(f).

Case No. 3:06cv177/MCR/MD

Sun Ray's argument that finding a documentation requirement under Article VII(J) would render Article VII(K)(2)[15] superfluous is similarly unconvincing. Reading Article VII(J) and Article VII(K) together shows that the requirements of each section are distinct and that the purpose of Article VII(K) is to allow insurers to further investigate a claim after receiving a sufficient proof of loss. For example, under Article VII(J)(4)(f), the insured is required to submit detailed repair estimates as part of its proof of loss. Under Article VII(K)(2), the insurer may additionally request "[a]ny written plans and specifications for repair of the damaged property that you can reasonably make available to us." See Art. VII(K)(2)(d). Article VII(K)(2)(d) thus allows the insurer to verify the detailed repair estimates previously submitted with the proof of loss by looking at the insured's actual plans and specifications for repair, rather than only at what the costs of repair were originally estimated to be.

Based on the unambiguous language of the SFIP, the court concludes that the SFIP requires insureds, as part of the proof of loss, to provide their insurers with detailed repair estimates as support for the amount of loss claimed; mere notice of the claim on the proof of loss form is insufficient to satisfy an insured's obligations under the SFIP.[16] This does not mean insureds must submit every bill, receipt, and related document, however, unless requested to do so by the insurer under Article VII(K)(2).[17] Instead, an insured must submit enough support to allow the insurer to evaluate the merits of the claim, including the estimated cost of repair. See Forman v. FEMA, 138 F.3d 543, 545 (5th Cir. 1998).[18] While

---

[15] See supra note 12 for the full text of Article VII(K)(2).

[16] The court also concludes that a single dollar figure on the proof of loss form does not constitute a "detailed repair estimate". Sun Ray's argument to the contrary ignores the basic definition of the terms "detailed" and "estimate".

[17] There is no requirement in Article VII(J) that insureds must submit every bill, receipt, and document related to the detailed repair estimates with their proof of loss. See Art. VII(J)(4)(f).

[18] See also Paulsen v. State Farm Ins. Co., 2008 WL 397772 (E.D.La. Feb. 11, 2008); Mitchell v. NFIP, 2008 WL 397756 (E.D.La. Feb. 8, 2008); Oechsner v. Hartford Fire Ins. Co., 2008 WL 89514 (E.D.La. Jan. 7, 2008); Guillot v. Allstate Ins. Co., 2008 WL 45359 (E.D.La. Jan. 2, 2008). In each of these cases, the district court concluded that under Article VII(J) insureds must provide the insurer with supporting documentation beyond the proof of loss form. See id. The finding in Copeland v. FEMA, 2004 WL 325577 (E.D.La. Feb. 18, 2004), cited by Sun Ray in opposition to the motion for summary judgment, is in accord. In each of these cases the court considered whether the insured "provided at least enough information for [the insurer] to evaluate the merits of the claim." Copeland, 2004 WL 325577 at *3.

Case No. 3:06cv177/MCR/MD

the documentation of an insured's detailed repair estimates most commonly takes the form of contractors' repair estimates, the insured must use its own judgment when furnishing the detailed repair estimates.[19] See Article VII(J)(5). In this case it is undisputed that Sun Ray failed to provide *any* support for its claimed loss. Old Dominion therefore had no basis by which to evaluate the merits of Sun Ray's asserted losses and thus summary judgment is appropriate.[20]

Finally, even if the court were to accept Sun Ray's argument that an insured is not required to submit supporting documentation absent a request for such documentation from the insurer, the court notes that Old Dominion in fact made such a request in this case.[21] During Soucy's adjustment of Sun Ray's loss he informed Sun Ray that it needed

---

[19] The amount and character of the supporting documentation required will depend on the facts of each individual case. See, e.g., Curole v. Louisiana Citizens Prop. Ins. Corp., 2007 WL 625933 (E.D.La. Feb. 23, 2007) (denying summary judgment where an issue of material fact existed as to whether photographs of the damaged property submitted by the insured were sufficient to show that the property was a total loss); but see Guillot, 2008 WL 45359 at *2 (finding an insured's statements in his complaint that there was "extensive damage," "structures had been 'racked,'" and "total destruction" were insufficient to satisfy the requirement in Article VII(J)(4)(f) that insureds provide specifications of damage to buildings and repair estimates). In this case, because it is undisputed that Sun Ray submitted no documentation with its proofs of loss, the court need not reach the question of what documentation is necessary to satisfy the requirement that insureds submit detailed repair estimates. The language of the SFIP indicates, however, that at a minimum insureds must identify the components of the insured building which have been damaged ("specifications of damaged buildings") and then estimate the cost of repairing each damaged component ("detailed repair estimates"). These estimates may consist of contractors' estimates or the insured's own valuation of the cost of repair based on its personal knowledge or research. Regardless of the method used to obtain the estimates, however, the insured must also provide some means by which the insurer can verify the amount claimed.

[20] The cases cited by Sun Ray do not require a contrary conclusion. See Burns v. FEMA, 84 F.Supp.2d 839 (S.D.Tex. 2000); Mahood v. Omaha Prop. & Cas., 174 F.Supp.2d 284 (E.D.Pa. 2001); Provenza v. State Farm Fire & Cas. Ins. Co., 2007 WL 1655567 (E.D.La. June 6, 2007). The courts in Burns and Mahood found that under the pre-2001 version of the SFIP the proof of loss and documentation requirements were separate. See Burns, 84 F.Supp.2d at 845-46; Mahood, 174 F.Supp.2d at 291-92. These cases are inapposite because under the version of the SFIP pertinent to this case insureds are required to submit detailed repair estimates as part of their proofs of loss. See Art. VII(J)(4)(f)(2003). Provenza is distinguishable because the court in that case was not dealing with the documentation requirements under Article VII(J)(4) and further because there is no evidence that Sun Ray was prevented from obtaining and submitting detailed repair estimates. See Provenza, 2007 WL 1655567 at *3.

[21] It is well-established that insurers in fact do not have an affirmative duty to request documentation from insureds that should have been submitted as part of the insured's proof of loss. See Wright v. Allstate Ins. Co., 415 F.3d 384, 388 (5th Cir. 2005) (citing Heckler v. Cmty. Health Servs. of Crawford County, Inc., 467 U.S. 51, 63, 104 S.Ct. 2218, 81 L.Ed.2d 42 (1984)) ("Where federal funds are implicated, the person seeking those funds is obligated to familiarize himself with the legal requirements for receipt of such funds.").

Case No. 3:06cv177/MCR/MD

to file an inventory of damaged personal property. Sun Ray complied with this request and as a result Soucy increased his adjustment of Sun Ray's contents loss. Soucy also noted that he had provided Sun Ray's counsel with a copy of his repair estimates for the damaged buildings. Sun Ray therefore had the opportunity to analyze Soucy's estimates line-by-line and present its reasons why it believed it was entitled to additional funds to repair its damaged buildings. Instead, Sun Ray's counsel sent Old Dominion a letter dated April 12, 2005, stating his disagreement with the amount of payment, but failing to explain why Old Dominion should make any payments above Soucy's adjustment. In response, Old Dominion sent Sun Ray a letter dated April 15, 2005, stating that Sun Ray needed to file supporting documentation in order to receive additional funds: "[a]t this time, we have not received any documentation that supports additional payment is due for flood damage. Since we have not received any documentation supporting additional payment is due, we have no choice but to deny your request for additional payment."  Even with this admonition, Sun Ray submitted its proofs of loss five months later without any supporting documentation. Old Dominion denied the proofs of loss for the same reason cited in its letter of April 15, 2005; i.e. Sun Ray's failure to submit "documentation to substantiate the amount being claimed."  In its denial letter, Old Dominion further stated that it would be "glad to review any additional documentation [Sun Ray wished] to submit."  Instead of submitting the requested documentation, Sun Ray filed suit.

Under the proof of loss provisions of its SFIPs, Sun Ray was required to provide Old Dominion with complete, adequate, signed and sworn proofs of loss including detailed repair estimates in support of the amount of loss claimed. Sun Ray had ample notice and opportunity to do so, yet never complied. Sun Ray's failure to comply with the proof of loss requirements of a federal insurance policy bars it from asserting a subsequent action for recovery under that policy. See Sanz, 328 F.3d at 1318. As the evidence before the court shows that there is no genuine issue of material fact remaining for trial and that Old Dominion is entitled to judgment as a matter of law, Old Dominion's motion for summary judgment shall be granted. Fed.R.Civ.P. 56; see also Celotex Corp., 477 U.S. at 322.

Accordingly, it is ORDERED:

1. Defendant Old Dominion Insurance Company's motion for summary judgment (doc. 30) is GRANTED.

2. Defendant Old Dominion Insurance Company's motion to strike (doc. 56) is DENIED as moot.

3. Plaintiff Sun Ray Village Owners Association's claim is DISMISSED, with prejudice.

3. The trial currently scheduled in this case for April 21, 2008, is cancelled.

4. The clerk shall enter judgment accordingly.

5. Plaintiff shall take nothing by this action.

6. Costs shall be taxed against plaintiffs.

DONE and ORDERED this 28th day of March, 2008.

　　　　　　　　　　　　　　_s/ M. Casey Rodgers_
　　　　　　　　　　　　　　**M. CASEY RODGERS**
　　　　　　　　　　　　　**UNITED STATES DISTRICT JUDGE**